# UNITED STATES DISTRICT COURT

## DISTRICT OF NEVADA

| | | |
|---|---|---|
| ANTHONY BAILEY, | ) | |
| | ) | |
| Plaintiff, | ) | Case No.: 2:19-cv-00057-GMN-EJY |
| vs. | ) | |
| | ) | **ORDER** |
| NDOC, *et al.*, | ) | |
| | ) | |
| Defendants. | ) | |
| _____ | ) | |

Pending before the Court is Defendants Sgt. Dogan,[1] D. Stevens, and D. Tristan's (collectively, Defendants'") Motion for Summary Judgment, (ECF No. 28). Plaintiff Anthony Bailey ("Plaintiff") filed a Response, (ECF No. 36), to which Defendants filed a Reply, (ECF No. 40).

Also pending before the Court is Defendants' Motion to File Under Seal Exhibit B to Defendants' Motion for Summary Judgment, (ECF No. 35).[2] Plaintiff did not file a Response.

For the reasons discussed below, the Court **GRANTS** Defendants' Motion for Summary Judgment and Defendants' Motion to File Under Seal.

///

---

[1] The Court notes that Defendants spell Defendant Sergeant Dogan differently from Plaintiff. Defendants spell his name as "Sergeant Dugan." (*See* Defs.' Mot. Summ. J. ("MSJ"), ECF No. 28). Since neither party clarifies the correct spelling of his name, the Court uses "Defendant Sergeant Dogan" for purposes of this Order.

[2] The Exhibit contains NDOC's confidential operating procedure concerning PREA investigations. (*See* Notice of Filing Under Seal Ex. B, ECF No. 31). For good cause appearing, the Court grants Defendants' Motion to File Under Seal Exhibit B.

# I.   BACKGROUND

This case arises out of Defendants' alleged constitutional violations while Plaintiff was incarcerated at High Desert State Prison ("HDSP"). (*See* Compl., Ex. 1 to Appl. for Leave to Proceed *in forma pauperis*, ECF No. 1-1); (*see also* Screening Order, ECF No. 4).  At HDSP, Plaintiff was housed in a level one behavioral modification prison unit. (*See* Compl. at 4). There, he held a yard labor crew job, had physical access to the prison law library twice a week, and attended Jumah religious services on Fridays. (*Id*.).

## A.  Factual Background

 On January 27, 2016, an inmate accused Plaintiff and another unnamed inmate of "asking him for sexual favors, making sexual comments, and physically touching his person." (*See* PREA Investigation Report, Ex. D to Appendix, ECF No. 34).  Defendant Dugan, who was assigned to supervise Plaintiff's unit that day, investigated the accusations and moved Plaintiff and the other inmate to administrative segregation pursuant to HDSP's Sexual Assault Policy and the Prison Rape Elimination Act ("PREA"). (*See id*. at 2); (*see also* AR 421, Ex. A to Appendix, ECF No. 34); (*see also* OP 421, ECF No. 30).

During the move, Plaintiff alleges that the unit officer placed him into handcuffs outside the purview of camera coverage, allegedly for the purpose of imposing corporal punishment. (Compl. at 4).  Plaintiff states that the unit officer ordered Plaintiff to drag his legal and personal properties approximately a quarter mile, uphill, while handcuffed. (*Id*.).  According to Plaintiff, the unit officer did not explain to him either verbally or in writing why he was being moved. (*Id*.).  Plaintiff notes, however, that Defendant Stevenson verbally explained to Plaintiff why Defendant Dogan ordered him to place Plaintiff into administrative segregation on February 5, 2016. (*Id*. at 5).

Because of his move to administrative segregation, Plaintiff lost his job, was denied access to Jumah services, and lost physical access to the prison law library. (*Id*.).  Additionally,

he allegedly endured daily smells of feces and urine for periods of 15 to 20 minutes and was otherwise subjected to eating cold food. (*Id*.).  On January 4, 2017, NDOC closed the PREA investigation "due to insufficient evidence for criminal prosecution and the inability to obtain the alleged victim's statement" since the victim was discharged a month after the incident. (*See* Cellmate History, Ex. H to Appendix, ECF No. 34); (*see also* PREA Investigation Report at 33).  NDOC moved Plaintiff out of administrative segregation shortly thereafter.

**B.  NDOC Policies**

There are two main policies at HDSP that address complaints of sexual harassment and rape in the prison context—OP 421 and AR 507.  Each policy is discussed in detail below.

**1.  OP 421: Sexual Assault of Inmates**

Pursuant to PREA, HDSP developed OP 421, which establishes the procedures concerning a PREA complaint. (*See* OP 421, ECF No. 30).  OP 421 states that HDSP "has a Zero Tolerance policy for any form of sexual misconduct to include staff/conductor/or volunteer on inmate or inmate on inmate sexual harassment, sexual assault, sexual abusive contact and consensual sex." (*Id*. at 1).  "Any staff member who receives a verbal or written report of sexual assault or any attempt thereof, will immediately report the information through their chain of command." (*Id*. at 28).  After seventy-two (72) hours, "the following steps shall be taken: (a) Ensure the victim is safe and kept separated from the aggressor; (b) Notify supervisor; (c) Escort the victim to the nearest department medical unit; (e) Collect evidence (if any) and book it with the appropriate chain of evidence form; (f) Place suspect in administrative segregation pending investigation; and (g) Include all written reports related to the sexual assault. (*Id*. at 32).[3]

//

---

[3] The Policy does not include Step "(d)" under "Procedure for incidents reported after 72hrs of occurrence." (*See* OP 421, ECF No. 30).

### 2.  AR 507: Administrative Segregation

AR 507 outlines HDSP's policy concerning administrative segregation.  According to AR 507, "[i]nmates will be temporarily placed in administrative segregation to protect the safety of the inmate, other persons, the institution or community or to conduct investigations into violent misconduct or misconduct which threatens escape or significant disruption of institutional operations." (*See* AR 507, Ex. B to Appendix, ECF No. 34).  An inmate who is placed in administrative segregation "will receive an initial administrative segregation hearing within three (3) working days of that temporary placement." (*See* AR 507.01(2)(C)).

On January 8, 2019, Plaintiff filed the instant suit alleging violations of the First, Eighth, and Fourteenth Amendments against NDOC, D. Stevens, Sergeant Dogan, D. Nevens, and D. Tristan. (Compl. at 3).  After screening, only the following claims survived: (1) First Amendment and RLUIPA claims against Defendants Stevens, Dogan, and Tristan; (2) an Eighth Amendment claim against Defendants Stevens, Dogan, and Tristan; and (3) a Fourteenth Amendment claim against Defendants Stevens, Dogan, and Tristan. (*See* Screening Order at 5–9, ECF No. 4).  Defendants thereafter filed the instant Motion for Summary Judgment. (*See* Defs.' MSJ, ECF No. 28).

## II.  <u>LEGAL STANDARD</u>

The Federal Rules of Civil Procedure provide for summary adjudication when the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that "there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a).  Material facts are those that may affect the outcome of the case. *See Anderson v. Liberty Lobby, Inc*., 477 U.S. 242, 248 (1986).  A dispute as to a material fact is genuine if there is a sufficient evidentiary basis on which a reasonable fact-finder could rely to find for the nonmoving party. *See id.*  "The amount of evidence necessary to raise a genuine issue of material fact is enough 'to require a jury or

1    judge to resolve the parties' differing versions of the truth at trial.'" *Aydin Corp. v. Loral*
2    *Corp.*, 718 F.2d 897, 902 (9th Cir. 1983) (quoting *First Nat'l Bank v. Cities Serv. Co*., 391 U.S.
3    253, 288–89 (1968)).   "Summary judgment is inappropriate if reasonable jurors, drawing all
4    inferences in favor of the nonmoving party, could return a verdict in the nonmoving party's
5    favor." *Diaz v. Eagle Produce Ltd. P'ship*, 521 F.3d 1201, 1207 (9th Cir. 2008) (citing *United*
6    *States v. Shumway*, 199 F.3d 1093, 1103–04 (9th Cir. 1999)).   A principal purpose of summary
7    judgment is "to isolate and dispose of factually unsupported claims." *Celotex Corp. v. Catrett*,
8    477 U.S. 317, 323–24 (1986).

9       In determining summary judgment, a court applies a burden-shifting analysis.   "When
10   the party moving for summary judgment would bear the burden of proof at trial, it must come
11   forward with evidence which would entitle it to a directed verdict if the evidence went
12   uncontroverted at trial.   In such a case, the moving party has the initial burden of establishing
13   the absence of a genuine issue of fact on each issue material to its case." *C.A.R. Transp.*
14   *Brokerage Co. v. Darden Rests., Inc.*, 213 F.3d 474, 480 (9th Cir. 2000) (citations omitted).   In
15   contrast, when the nonmoving party bears the burden of proving the claim or defense, the
16   moving party can meet its burden in two ways: (1) by presenting evidence to negate an
17   essential element of the nonmoving party's case; or (2) by demonstrating that the nonmoving
18   party failed to make a showing sufficient to establish an element essential to that party's case
19   on which that party will bear the burden of proof at trial. *See Celotex Corp.*, 477 U.S. at 323–
20   24.   If the moving party fails to meet its initial burden, summary judgment must be denied and
21   the court need not consider the nonmoving party's evidence. *See Adickes v. S.H. Kress & Co.*,
22   398 U.S. 144, 159–60 (1970).

23      If the moving party satisfies its initial burden, the burden then shifts to the opposing
24   party to establish that a genuine issue of material fact exists. *See Matsushita Elec. Indus. Co. v.*
25   *Zenith Radio Corp*., 475 U.S. 574, 586 (1986).   To establish the existence of a factual dispute,

the opposing party need not establish a material issue of fact conclusively in its favor.  It is sufficient that "the claimed factual dispute be shown to require a jury or judge to resolve the parties' differing versions of the truth at trial." *T.W. Elec. Serv., Inc. v. Pac. Elec. Contractors Ass'n*, 809 F.2d 626, 631 (9th Cir. 1987).  However, the nonmoving party "may not rely on denials in the pleadings but must produce specific evidence, through affidavits or admissible discovery material, to show that the dispute exists," *Bhan v. NME Hosps., Inc.*, 929 F.2d 1404, 1409 (9th Cir. 1991), and "must do more than simply show that there is some metaphysical doubt as to the material facts."  *Orr v. Bank of America*, 285 F.3d 764, 783 (9th Cir. 2002) (internal citations omitted).  "The mere existence of a scintilla of evidence in support of the plaintiff's position will be insufficient." *Anderson*, 477 U.S. at 252.  In other words, the nonmoving party cannot avoid summary judgment by relying solely on conclusory allegations that are unsupported by factual data. *See Taylor v. List*, 880 F.2d 1040, 1045 (9th Cir. 1989).  Instead, the opposition must go beyond the assertions and allegations of the pleadings and set forth specific facts by producing competent evidence that shows a genuine issue for trial. *See Celotex Corp.*, 477 U.S. at 324.

At summary judgment, a court's function is not to weigh the evidence and determine the truth but to determine whether there is a genuine issue for trial. *See Anderson*, 477 U.S. at 249.  The evidence of the nonmovant is "to be believed, and all justifiable inferences are to be drawn in his favor." *Id*. at 255.  But if the evidence of the nonmoving party is merely colorable or is not significantly probative, summary judgment may be granted. *See id.* at 249–50.

## III.   DISCUSSION

The Court will address Plaintiff's claims in the following order: (1) First Amendment and Religious Land Use and Institutional Persons Act ("RLUIPA") claims; (2) Eighth Amendment conditions of confinement claim; and (3) Fourteenth Amendment due process claim.

## A. FIRST AMENDMENT AND RLUIPA

Plaintiff first alleges that Defendants violated the First Amendment and RLUIPA by placing and keeping him in administrative segregation, where he could not regularly attend Jumah religious services. (Screening Order 6:17–24). Defendants move for summary judgment with respect to both claims. Specifically, Defendants argue that they are not liable under supervisor liability because Plaintiff fails to establish that: (1) Defendants personally participated in any decisions regarding Plaintiff's ability to access religious services; and (2) Defendants' wrongful conduct caused the alleged deprivation of Plaintiff's constitutionally protected religious rights. (Defs.' MSJ 8:4–9:4). Defendants alternatively argue that qualified immunity applies. (*Id*. 10:19–13:22). The Court first discusses the merits of Plaintiff's religious claims before turning to Defendants' alternative argument on qualified immunity.

### 1. Supervisory Liability under Section 1983

"There are two elements to a section 1983 claim: (1) the conduct complained of must have been under color of state law, and (2) the conduct must have subjected the plaintiff to a deprivation of constitutional rights." *Jones v. Cmty. Redevelopment Agency of Los Angeles*, 733 F.2d 646, 649 (9th Cir. 1984). Under a theory of supervisory liability, "[a] supervisor is only liable for the constitutional violations of . . . subordinates if the supervisor participated in or directed the violations, or knew of the violations and failed to act to prevent them. There is no *respondeat superior* liability under [§] 1983." *Taylor v. List*, 880 F.2d 1040, 1045 (9th Cir. 1989) (citations omitted). "Even if a supervisory official is not directly involved in the allegedly unconstitutional conduct, '[a] supervisor can be liable in his individual capacity for his own culpable action or inaction in the training, supervision, or control of his subordinates; for his acquiescence in the constitutional deprivation; or for conduct that showed a reckless or callous indifference to the rights of others.'" *Starr v. Baca*, 652 F.3d 1202, 1208 (9th Cir. 2011) (quoting *Watkins v. City of Oakland*, 145 F.3d 1087, 1093 (9th Cir. 1998)).

1    Here, a genuine dispute of material fact exists as to whether Defendants personally
2    participated in the alleged constitutional violations.  Defendants argue that they did not
3    personally participate in restricting Plaintiff's access to religious services because Defendants
4    did not contribute to any decisions concerning Plaintiff's access to religious services or create
5    any policies concerning religious services for HDSP's administrative segregation unit. (Defs.'
6    MSJ 7:21–23).  The crux of Plaintiff's claim, however, is that Defendants personally
7    participated by moving Plaintiff to administrative segregation, where he was deprived of his
8    religious rights. (*See* Compl. at 4(a)).  Though Defendants did not control the religious policies
9    in administrative segregation, Defendants affirmatively acted by relocating him to an
10   environment where Plaintiff's constitutional religious rights were allegedly limited.

11   Citing to *Coronel v. Paul*, 225 F. App'x 575, 577 (9th Cir. 2007), Defendants argue that
12   individuals did not personally participate in the alleged violation because they neither oversaw
13   nor carried out the prohibition. (*See* Reply 3:23–4:19).  However, "[a] person 'subjects' another
14   to deprivation of a constitutional right, within the meaning of section 1983, if he does an
15   affirmative act, participates in another's affirmative acts or omits to perform an act which he is
16   legally required to do that causes the deprivation of which complaint is made." *Johnson v.*
17   *Duffy*, 588 F.2d 740, 743 (9th Cir. 1978).  Defendants' relocation of Plaintiff to administrative
18   segregation is an affirmative action that allegedly caused Plaintiff's religious deprivations while
19   in administrative segregation.  Contrary to Defendants' argument which is based an
20   unpublished Ninth Circuit decision, Defendants participated by "affirmatively act[ing]" in a
21   series of events that led to the eventual constitutional violation. *Id*.

22   Moreover, a genuine dispute of material fact exists with respect to causation.  "In a
23   § 1983 action, the plaintiff must . . . demonstrate that the defendant's conduct was the
24   actionable cause of the claimed injury.  To meet this causation requirement, the plaintiff must
25   establish both causation-in-fact and proximate causation." *Harper v. City of Los Angeles*, 533

F.3d 1010, 1026 (9th Cir. 2008) (citation omitted).  "The requisite causal connection can be established . . . by setting in motion a series of acts by others or by knowingly refus[ing] to terminate a series of acts by others, which [the supervisor] knew or reasonably should have known would cause others to inflict a constitutional injury." *Starr v. Baca*, 652 F.3d 1202, 1207–08 (9th Cir. 2011) (internal quotation marks and citations omitted) (alterations in original).  Defendants specifically argue that their actions did not cause the alleged constitutional deprivation because Defendants were legally required to relocate Plaintiff to administrative segregation. (Defs.' MSJ 8:16–9:4).  They focus on the "wrongful act" language in *Hansen v. Black*, 885 F.2d 642, 646 (9th Cir. 1989), which states, in part, that a supervisor may be liable if there is "a sufficient causal connection between the supervisor's *wrongful conduct* and the constitutional violation." *Hansen*, 885 F.2d at 646 (citing *Thompkins v. Belt*, 828 F.2d 298, 303-04 (5th Cir. 1987)) (emphasis added).

Defendants, however, fail to explain what constitutes a "wrongful act" under *Hansen*. Defendants seemingly argue that Defendant's relocation of Plaintiff to administrative segregation does not amount to a constitutional violation under the First Amendment and RLUIPA because Defendants were legally obligated to move Plaintiff to administrative segregation pursuant to PREA National Standards. (*See* Defs.' MSJ 8:17–9:4); (*see also* PREA National Standards, Ex. L to Appendix, ECF No. 34).  Defendants, however, fail to mention the legal standards for a First Amendment and RLUIPA violation.  As the movant for summary judgment, Defendants carry the burden in demonstrating that no genuine dispute of material fact exists as to Plaintiff's religious claims.  Though Defendants were legally obligated to move Plaintiff to administrative segregation, the Court cannot grant summary judgment without Defendants explaining how, as a matter of law, Defendants' move did not violate the First Amendment and RLUIPA and otherwise, was not "wrongful."  Accordingly, the Court denies summary judgment as to Plaintiff's First Amendment and RLUIPA claims.

### 2. Qualified Immunity

Defendants additionally argue that they are entitled to qualified immunity with respect to Plaintiff's religious claims. (*See* Defs.' MSJ 10:20). "The doctrine of qualified immunity protects government officials 'from liability for civil damages insofar as their conduct does not violate clearly established statutory or constitutional rights of which a reasonable person would have known.'" *Pearson v. Callahan*, 555 U.S. 223, 231, 129 S. Ct. 808, 172 L. Ed. 2d 565 (2009) (citation omitted). "Qualified immunity gives government officials breathing room to make reasonable but mistaken judgments about open legal questions. When properly applied, it protects 'all but the plainly incompetent or those who knowingly violate the law.'" *Ashcroft v. al-Kidd*, 563 U.S. 731, 743 (2011) (quoting *Malley v. Briggs*, 475 U.S. 335, 341, 106 S. Ct. 1092, 89 L. Ed. 2d 271 (1986)). "The purpose of qualified immunity is to strike a balance between the competing 'need to hold public officials accountable when they exercise power irresponsibly and the need to shield officials from harassment, distraction, and liability when they perform their duties reasonably.'" *Mattos v. Agarano*, 661 F.3d 433, 440 (9th Cir. 2011) (quoting *Pearson*, 555 U.S. at 231).

"In determining whether an officer is entitled to qualified immunity, we consider (1) whether there has been a violation of a constitutional right; and (2) whether that right was clearly established at the time of the officer's alleged misconduct." *Lal v. California*, 746 F.3d 1112, 1116 (9th Cir. 2014) (citing *Pearson*, 555 U.S. at 232). The plaintiff bears the burden of proof on both factors. *Sorrels v. McKee*, 290 F.3d 965, 969 (9th Cir. 2002); *Cruz v. Kauai County*, 279 F.3d 1064, 1069 (9th Cir. 2002). For a right to be clearly established, its contours "must be sufficiently clear that a reasonable official would understand that what he is doing violates that right." *Saucier v. Katz*, 533 U.S. 194, 202, 121 S. Ct. 2151, 150 L. Ed. 2d 272 (2001) (quoting *Anderson v. Creighton*, 483 U.S. 635, 640, 107 S. Ct. 3034, 97 L. Ed. 2d 523 (1987)).

Plaintiff fails to meet his burden to show that Defendants violated a clearly established right.  Plaintiff, in response to Defendants' raised defense of qualified immunity, presents a new argument that Defendants restricted his access to Jumah services in retaliation for filing grievances. (Pl.'s Resp. to Defs.' MSJ at 5–6).   Plaintiff, however, did not raise a claim of retaliation in his initial Complaint. (*See* Compl., ECF No. 1); (*see also* Screening Order, ECF No. 4).  Even liberally construing Plaintiff's response, Plaintiff fails to present the Court with caselaw that would give Defendants notice that moving Plaintiff to administrative segregation would violate his religious constitutional rights. *Reichle v. Howards*, 566 U.S. 658, 132 S. Ct. 2088, 2093, 182 L. Ed. 2d 985 (2012) (the "right must be sufficiently clear 'that every reasonable official would [have understood] that what he is doing violates that right.'").  Because Plaintiff fails to meet his burden as to qualified immunity, the Court accordingly grants summary judgment with respect to Plaintiff's First Amendment and RLUIPA claims.

## B. EIGHTH AMENDMENT

Plaintiff alleges that he was housed with Crip gang members while in administrative segregation and Defendants, as such, failed to protect him in violation of the Eighth Amendment. (Compl. ¶ 14); (Screening Order 8:3–9).  Defendants argue that Plaintiff failed to exhaust his Eighth Amendment claim because he did not file a grievance alleging that he was facing threats from Crip gang members. (Defs.' MSJ 7:9–19).  In response, Plaintiff argues that the Bed History Report reveals no names of prior cellmates because "there was a conspiracy to have Bailey harmed." (Pl.'s Resp. to Defs.' MSJ at 19).

The Prison Litigation Reform Act ("PLRA") provides that "[n]o action shall be brought with respect to prison conditions under [42 U.S.C. § 1983], or any other Federal law, by a prisoner confined in any jail, prison, or other correctional facility until such administrative remedies as are available are exhausted." 42 U.S.C. § 1997e(a).  The exhaustion requirement in prisoner cases is mandatory. *Woodford v. Ngo*, 548 U.S. 81, 84, 126 S. Ct. 2378, 165 L. Ed. 2d

368 (2006).  Further, the PLRA requires "proper exhaustion" of administrative remedies. *Id*. at 93.  Proper exhaustion "means that a grievant must use all steps the prison holds out, enabling the prison to reach the merits of the issues." *Griffin v. Arpaio*, 557 F.3d 1117, 1119-20 (9th Cir. 2009).

Courts should decide exhaustion before examining the merits of a prisoner's claim. *Albino v. Baca*, 747 F.3d 1162, 1170 (9th Cir. 2014).  The defendant bears the initial burden to show that there was an available administrative remedy, and that the prisoner did not exhaust it. *Id*. at 1169, 1172.  Once that showing is made, the burden shifts to the prisoner, who must either demonstrate that he, in fact, exhausted administrative remedies or "come forward with evidence showing that there is something in his particular case that made the existing and generally available administrative remedies effectively unavailable to him." *Id*. at 1172.  The ultimate burden, however, rests with the defendant. *Id*.  Summary judgment is appropriate if the undisputed evidence, viewed in the light most favorable to the prisoner, shows a failure to exhaust. *Id*. at 1166, 1168; *see* Fed. R. Civ. P. 56(a).

Here, Defendants present a copy of the NDOC Administrative Regulation ("AR") 740, entitled "Inmate Grievance Procedure," which catalogs the administrative remedies and associated procedures available to NDOC inmates. (AR 740, Ex. I to Defs.' MSJ, ECF No. 34). In order for a plaintiff to exhaust available remedies, AR 740 first requires the inmate to discuss the issue with a caseworker prior to initiating the grievance process. (AR 740.04 at 4).  The procedure then continues as follows: (1) an Informal Grievance; (2) a First Level Grievance appealing the Informal Grievance decision to the warden; and (3) a Second Level Grievance, which is decided by the Assistant Director of Operations. (AR 740.05-.07 at 4–9).  "In the event an inmate's claim is deemed inappropriate for review or not within the intended scope of this Regulation, the inmate may appeal that decision only to the next procedural level of review." (AR 740.03(5) at 3).  "An inmate who is dissatisfied with the response to a grievance

1  at any level may appeal the grievance to the next level" within five days after the return of a

2  decision. (AR 740.03(6) at 3).

3        Here, Plaintiff did not file any grievances regarding his housing with Crips gang

4  members. (*See* Grievance History Report, Ex. J to Appendix, ECF No. 34-1).  His grievances

5  concern the lack of non-sodium diet, denied access to the law library, denied access to the

6  institutional chapel, property damages from water leaks, and lack of hot water.  (*Id*. at 11).

7  Accordingly, the Court finds that Plaintiff failed to exhaust his administrative remedies and

8  grants summary judgment in favor of Defendants with respect to Plaintiff's Eighth Amendment

9  conditions of confinement claim.[4] [5]

10  **C. FOURTEENTH AMENDMENT**

11        Lastly, Plaintiff alleges that Defendants placed him in administrative segregation

12  without review of the evidence and thus, without justification to segregate him from the general

13  population. (Compl. at 4(b)–4(c)).  Plaintiff additionally alleges that he did not receive periodic

14  reviews while he was in administrative segregation, in violation of the Fourteenth Amendment.

15  (*Id*. at 4(b)).  Contrary to Plaintiff's allegations, Defendants argue that NDOC records show

16  that Plaintiff received periodic review of his placement. (Defs.' MSJ 9:5–10:18).

17        Under the Fourteenth Amendment, prisoners "may not be deprived of life, liberty, or

18  property without due process of law." *Wolff v. McDonnell*, 418 U.S. 539, 556, 94 S. Ct. 2963,

19  41 L. Ed. 2d 935 (1974).  However, "the fact that prisoners retain rights under the Due Process

20  Clause in no way implies that these rights are not subject to restrictions imposed by the nature

21

_____

22  [4] Plaintiff also asserts that he sought his ex-cellmates names and gang status; however, was denied access during
the discovery phase by Defendants "because of the inferences that can be drawn by the Court." (Pl.'s Resp. to

23  Defs.' MSJ at 19).  Plaintiff, however, does not provide any additional evidence demonstrating that he requested
such information.  Nevertheless, the Court grants summary judgment as to Plaintiff's Eighth Amendment claim

24  because Plaintiff's Grievance History Report illustrates that Plaintiff failed to exhaust all administrative
remedies. (*See generally* Grievance History Report).

25  [5] Because the Court grants summary judgment for exhaustion of administrative remedies, the Court does not
further analyze Defendant's alternative argument of qualified immunity.

of the regime to which they have been lawfully committed." *Id.*  "[T]here must be mutual accommodation between institutional needs and objectives and the provisions of the Constitution that are of general application." *Id.*  The Supreme Court held that a prisoner possesses a liberty interest under the federal constitution when a change occurs in confinement that "imposes atypical and significant hardship on the inmate in relation to the ordinary incidents of prison life." *See Sandin v. Conner*, 515 U.S. 472, 484, 115 S. Ct. 2293, 132 L. Ed. 2d 418 (1995).

When a prisoner is placed in administrative segregation, prison officials must, within a reasonable time after the prisoner's placement, conduct an informal, non-adversary review of the evidence justifying the decision to segregate the prisoner. *See Hewitt v. Helms*, 459 U.S. 460, 476, 103 S. Ct. 864, 74 L. Ed. 2d 675 (1983), *abrogated in part on other grounds by Sandin v. Conner*, 515 U.S. 472, 115 S. Ct. 2293, 132 L. Ed. 2d 418 (1995).  After the prisoner has been placed in administrative segregation, prison officials must periodically review the initial placement. *See id.* at 477 n.9.  The Ninth Circuit has held that where the prisoner alleges material differences between the conditions in general population and administrative segregation, the prisoner's procedural due process claim should not be dismissed on the pleadings. *See Jackson v. Carey*, 353 F.3d 750, 755-57 (9th Cir. 2003).

Here, Defendant provides a copy of Plaintiff's Case Note Printout Report ("Report"), which catalogues the history of Plaintiff's reviews from 2016 to 2017. (*See* Case Notes, Ex. G to Appendix, ECF No. 34).  Defendants reported meeting with Plaintiff on January 29, 2016—two days after Defendants moved Plaintiff to administrative segregation—to explain Plaintiff's move to administrative segregation. (*Id.*).  The Report specifically states that Plaintiff "was informed that an FCC will be conducted at the conclusion of his investigation and that he would receive 48 hour notice prior to the FCC.  Inmate stated he had no concerns at this time." (*See id.*).  Plaintiff further received four (4) reviews while in administrative segregation on

April 21, 2016; June 7, 2016; November 8, 2016; and November 30, 2016. (*See id.*).  As the Report demonstrates, Defendants explained to Plaintiff why he was moved to administrative segregation and further provided periodic reviews while Plaintiff was in administrative segregation.  Plaintiff does not provide additional justification demonstrating that he was entitled to more detailed notice. *See Zimmerlee v. Keeney*, 831 F.2d 183, 188 (9th Cir.1987) ("*Wolff* provides little guidance as to the specificity of notice necessary to satisfy due process.").  The evidence provided reflects that Defendants legally moved Plaintiff to administrative segregation based on HDSP policy and the confidential PREA complaint. Plaintiff's allegation that he failed to receive notice and proper review thus does not survive summary judgment review.  Accordingly, the Court grants Defendants' Motion for Summary Judgment.[6]

## IV.   CONCLUSION

IT IS HEREBY ORDERED that Defendants' Motion for Summary Judgment, (ECF No. 28), is **GRANTED.**

IT IS FURTHER ORDERED that Defendants' Motion to Seal, (ECF No. 35), is **GRANTED**.

DATED this __8__ day of March, 2022.

_____
Gloria M. Navarro, District Judge
UNITED STATES DISTRICT COURT

---

[6] Because the Court grants summary judgment as to Plaintiff's Fourteenth Amendment claim, the Court does not further analyze Defendant's alternative argument of qualified immunity.